# Supreme Court of Texas

No. 21-0641

McLane Champions, LLC and R. Drayton McLane, Jr.,

*Petitioners*,

v.

Houston Baseball Partners LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE BLACKLOCK, dissenting.

I agree with the Chief Justice that the TCPA applies, which means that unlike the Court, I would reach the question of whether the claims should be dismissed. They should, and I write separately on that point.

This lawsuit was filed in 2013, not long after a group of investors led by Jim Crane bought the Houston Astros and the team's share of an affiliated TV network from Drayton McLane for approximately $615 million. The suit alleges that Mr. Crane and his investors were injured when they purchased the Astros in 2011.

Anyone who has followed the Astros over the last several years could be forgiven for wondering why the courts are still entertaining the notion that Mr. Crane and his investors are worse off for having bought the team. In 2013, however, the allegation may have sounded plausible. The team was struggling on the field, and the new TV network was in a financial tailspin. Perhaps the team's new owners had a genuine reason, in 2013, to regret the price they paid and to suspect they had been defrauded. So they went to court with the intention of proving that their purchase of the Astros caused them injury. They asked the courts to require the defendants to remedy that injury, which they alleged was the product of the defendants' fraud.

Lawsuits like this one tend to take a long time. And as time passed, any suggestion that Mr. Crane or his investors were injured when they purchased the Astros rapidly became less and less plausible. The Astros made the playoffs in 2015 for the first time in ten years, and in 2017 they won the franchise's first World Series Championship. They advanced to at least the American League Championship Series in each of the next five years, including three more trips to the World Series and one more World Series Championship.

Today, the Houston Astros are one of the most consistently successful franchises in American sports. Analysts estimate the team's value at $2.25 billion, nearly four times what the plaintiffs paid in 2011.[1] Aside from any profit earned by the team's owners during these

---

[1] *See* Mike Ozanian & Justin Teitelbaum, *Baseball's Most Valuable Teams 2023: Price Tags Are Up 12% Despite Regional TV Woes*, FORBES (Mar. 23, 2023), https://www.forbes.com/sites/mikeozanian/2023/03/23/baseballs-

banner years, the appreciation in the team's value alone has considerably outpaced even the extraordinary appreciation of the stock market over the same period. From today's perspective, the allegation that Mr. Crane and his investors suffered damages when they purchased the Astros is difficult to take seriously. It may be that Mr. Crane's shrewd ownership decisions deserve some credit for the team's recent success, but that does not change the fact that the decision to buy the team in 2011 for $615 million has turned out to be an enormous success rather than a damaging failure.

The plaintiffs' briefing in this Court asserts that if not for the alleged false representations by the sellers of the Astros in 2011, Mr. Crane and his investors "would never have entered into" the deal to buy the team. If that is true, then they should be thanking the defendants—not suing them—for inducing them to go down a road that has led to so much success. Fraudulent inducement is never a good thing, but it is only actionable in court when it misleads the plaintiff *to his detriment*. A party who benefits from having been fraudulently induced into making a deal he otherwise would not have made has suffered no injury.

A conventional judicial remedy for a transaction procured by fraud is rescission of the deal. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 676–77 (Tex. 2000). Surely Mr. Crane has no interest in unwinding his purchase of the Astros by returning the team to its prior owners in exchange for the $615 million he claims to regret having paid—although I suspect Mr. McLane would gladly take that

most-valuable-teams-2023-price-tags-are-up-12-despite-regional-tv-woes/?sh= 65dad6f26501.

deal. Instead of the conventional remedy of rescission, the plaintiffs' theory of the case is that the courts should award them the difference between what they paid for the Astros and what they claim they "should" have paid—whatever that means.

So this lawsuit asks the courts to intervene in a deal that has turned out to be wildly successful for one side in order to make that deal even more wildly successful for that side. But the courts are not—or at least should not be—in the business of making a party's successful business deals even more successful. The courts are in the business of remedying injuries. There is no longer any injury here, assuming there ever was one, and this lawsuit should no longer exist.

The courts have struggled to deal with this case in a timely manner, but judicial dismissal is not the only way a lawsuit can end. A party who may have had some reason to seek redress in 2013 need not continue to press his claims when, over time, a deal that once looked like a grave injury comes to look far more like a great victory.

I respectfully dissent.

James D. Blacklock
Justice

**OPINION FILED:** June 30, 2023

4